## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VOTEVETS ACTION FUND,<br>2201 Wisconsin Ave NW #320<br>Washington, DC 20007,<br><br>       *Plaintiff*,<br><br>       vs.<br><br>UNITED STATES<br>DEPARTMENT OF DEFENSE,<br>1155 Defense Pentagon<br>Washington, DC 20301-1155,<br><br>UNITED STATES<br>DEPARTMENT OF THE ARMY,<br>1500 Defense Pentagon<br>Washington, DC 20310,<br><br>       *Defendants*. | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.  Plaintiff VoteVets Action Fund ("VoteVets") brings this action against Defendants U.S. Department of Defense ("DOD") and U.S. Department of the Army ("Army"; collectively "Defendants") to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  Defendants have failed to respond fully to Plaintiff's requests for records related to the events that led to the deaths of service members in the military incidents in Niger and Yemen.

2.  These records are of major public importance as they pertain to the, as of yet insufficiently explained, deaths of American service members in foreign lands.

3.     Defendants' failure to comply with their FOIA obligations requires Plaintiff to seek judicial action to compel them to undertake a reasonable search and produce responsive, non-exempt records in a timely manner.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.     Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

6.     Plaintiff VoteVets is a not-for-profit organization incorporated under the laws of the District of Columbia.  Plaintiff is also known as VoteVets.org.  Plaintiff works to ensure that the voices of America's veterans are heard regarding matters of public policy.

7.     Defendants DOD and Army are both federal agencies within the meaning of FOIA, 5 U.S.C. § 552(f)(1), and are headquartered in Washington, D.C.  Defendants have possession, custody, and control of records to which Plaintiff seeks access.

## FACTUAL ALLEGATIONS

8.   Since President Trump took office, the White House has provided delayed, unclear, and/or contradictory public statements regarding two overseas military incidents that resulted in the deaths of multiple American service members.

### *October 4, 2017 Niger Operation*

9.     In October, a U.S. convoy was unexpectedly ambushed by suspected ISIS-affiliated militants near the Niger-Mali border.  A multi-national force of American, Nigerien, and French forces, with the support of an American private aviation contractor, responded to the incident to help drive off the hostile force and rescue the U.S. personnel.

10.     Four U.S. soldiers were killed and two were wounded in the attack. One of the American soldiers killed in the incident, Sgt. La David Johnson, was missing for two days before U.S. forces recovered his body.  Accounts from Nigerien villagers who discovered his body suggest that Sgt. Johnson may have been captured alive and executed by militants.[1]

11.     Earlier this year, the United States Africa Command informed Congress that it lacked "dedicated assets" for "personnel recovery" due to "inconsistent resourcing of key requirements and capabilities" in this area of the world.[2] Indeed, air support from French forces took an hour or more to arrive after the beginning of the attack in Niger.[3]

12.     In the aftermath of the attack, the Trump Administration's scarce public statements have been contradictory, confusing, and sometimes offensive. For example:

- Shortly after the attack, a draft statement of condolences by the White House was prepared but never released.[4]

- President Trump made his first comments about the operation on October 16, over a week after the tragedy occurred.[5]

---

[1] *See* Sudarsan Raghavan, *U.S. Soldier in Niger Ambush was Bound and Apparently Executed, Villagers Say*, Wash. Post, Nov. 10, 2017, https://www.washingtonpost.com/world/africa/us-soldier-in-niger-ambush-was-bound-and-apparently-executed-villagers-say/2017/11/10/3aebba3e-c442-11e7-9922-4151f5ca6168_story.html?utm_term=.b8505ec7a68e.

[2] *See* Transcript of Gen. Thomas D. Waldhouser, Commander, U.S. Afr. Command at the U.S. Senate Comm. on Armed Services Hearing on the U.S Cent. Command and U.S. Afr. Command at 23-24 (Mar. 9, 2017), http://www.africom.mil/media-room/document/28720/africom-2017-posture-satement.

[3] *See* Alex Horton, *More Remains Belonging to Sgt. La David Johnson Found in Niger, Military Says,* Wash. Post, Nov. 21, 2017, https://www.washingtonpost.com/news/checkpoint/wp/2017/11/21/more-remains-belonging-to-sgt-la-david-johnson-found-in-niger-military-says/?utm_term=.ce210d9adcfa.

[4] *See* Nahal Toosi, *White House Staff Drafted Niger Sympathy Statement for Trump That Was Never Released,* Politico, Oct. 18, 2017, http://www.politico.com/story/2017/10/18/trump-niger-condolence-statement-243917.

[5] *See* Dan Merica, *A Timeline of the White House After the Niger Raid,* CNN Politics, Oct. 20, 2017, http://www.cnn.com/2017/10/20/politics/niger-timeline-white-house-president-donald-trump/index.html.

- When pressed about his outreach to the families of service members involved in the operation, President Trump falsely claimed that his predecessors in the Oval Office had not personally contacted Gold Star families to offer condolences and to express sympathy for their losses.[6]

13.     The Administration's refusal to answer basic questions about the attack and the events that led to the loss of these service members' lives is troubling.  Indeed, Senator McCain, when asked if the Trump Administration has been forthcoming about the attack, replied, "of course not" adding, "it may require a subpoena."[7]

*January 29, 2017 Yemen Operation*

14.     On January 29, 2017, American forces engaged in a firefight with al Qaeda militants during an operation in Central Yemen.  The firefight resulted in the death of Navy SEAL William "Ryan" Owens, as well as multiple Yemeni civilians, including children.[8]

15.     In the aftermath of the raid, the Trump Administration provided inconsistent and inaccurate information to the public. For example:

---

[6] *See* Press Release, The White House, Remarks by President Trump and Senate Majority Leader Mitch McConnell in Joint Press Conference (Oct. 16, 2017), https://www.whitehouse.gov/the-press-office/2017/10/16/remarks-president-trump-and-senate-majority-leader-mitch-mcconnell-joint; *See* Julia Glum, *Gold Star Military Families Call Out Trump by Sharing Stories About Obama*, Newsweek, Oct. 18, 2017, http://www.newsweek.com/obama-gold-star-military-families-trump-687596.

[7] *See* Connor O'Brien, *McCain Threatens a Subpoena to Get Details on Niger Ambush*, Politico, Oct. 19, 2017, http://www.politico.com/story/2017/10/19/niger-ambush-john-mccain-subpoenas-243951.

[8] *See* Eric Schmitt, *U.S. Commando Killed in Yemen in Trump's First Counterterrorism Operation,* N.Y. Times, Jan. 29, 2017, https://www.nytimes.com/2017/01/29/world/middleeast/american-commando-killed-in-yemen-in-trumps-first-counterterror-operation.html; *See* Richie Duchon, *Civilians, Including Children, Killed in U.S. Raid on Al Qaeda in Yemen, Military Says,* NBC News, Feb. 2, 2017, https://www.nbcnews.com/news/us-news/civilians-includingchildren-killed-u-s-raid-al-qaeda-yemen-n715706.

• The Administration called the operation "highly successful," while Senator John McCain called it a "failure," implying that the risk of loss of American lives going into the operation was known to be too high.[9]

• News reports, despite citing anonymous Administration officials, nevertheless "have produced inconsistent reports about the quality of the intelligence gathered."[10]

• The only concrete example of seized intelligence which has been released by DOD was later found to have been "already publicly available online and had been since 2007."[11]

Plaintiff's FOIA Requests

16.    In an effort to understand, and explain to the public, the events that led to the

deaths of service members in the military incidents in Niger and Yemen, Plaintiff submitted a

FOIA request both to DOD and to the Army.  These requests sought records relating to

communication efforts between the White House and DOD or the Army in the aftermath of the

incidents in Yemen and Niger.

17.    Plaintiff submitted these FOIA requests by email on October 24, 2017.

18.    Plaintiff provided Defendants with specific and limited requests, asking that each

Defendant provide the following records:

• All records that contain any of the following search terms: Yemen, Yakla; al-Ghayil; Al Bayda; daughter; al-Qaeda; AQAP; al-Dhabab; al Dahab; al-Rimi; Baghdadi; operational plan; OPLAN; operational goal; risk assessment; TSOP; Kushner; Bannon; Flynn; Trump statement; POTUS statement; Obama.

The time period Plaintiff requested for these search terms was from January 28, 2017 to March 1, 2017.

---

[9] *See* Emma Loop, *John McCain Says the Recent Yemen Raid was a "Failure",* BuzzFeed News, Feb. 7, 2017, https://www.buzzfeed.com/emmaloop/john-mccain-says-the-recent-yemen-raid-was-a-failure?utm_term=.meE1Ap9JR#.icYGXgBkr.

[10] Lauren Carroll, *What Donald Trump Left Out About the Yemen Raid that Killed Navy SEAL Ryan Owens,* PolitiFact, Mar. 1, 2017, http://www.politifact.com/truth-o-meter/2017/mar/01/what-donald-trump-left-out-about-successful-yemen-/.

[11] *Id.*

- All records that contain any of the following search terms: Niger; Niamey; AFRICOM; golden hour; risk assessment; response time; public statement; Berry Aviation; David Johnson; Trump statement; POTUS statement; White House statement; WH statement.

The time period Plaintiff requested for these search terms was from October 3, 2017 to November 3, 2017.

19.     Plaintiff requested that DOD search the Office of the Assistant to the Secretary of Defense for Public Affairs, and Office of the Assistant to the Secretary of Defense for Legislative Affairs.

20.     Plaintiff requested that the Army search the Office of the Chief of Public Affairs, and Office of the Chief Legislative Liaison.

21.     Plaintiff stated that its requested records included, but were not limited to: talking points, press releases, public statements, message guidance, question-and-answer guidance, and any other guidance or discussion on how to respond to inquiries from Congress, the press, or the public.  The request also included all drafts of such records and any internal or external communications regarding the development and/or distribution of such records in their search for responsive records.

22.     Importantly, in making the requests, Plaintiff was concerned about protecting the privacy of military families.  As such Plaintiff stated that it explicitly was not seeking the following records: transcripts of calls with Gold Star families; Gold Star family contact information, including email addresses, home or office addresses, and phone-numbers; and content of emails or other correspondence from Gold Star families.

23.     Plaintiff also sought waivers of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii).  This provision requires the waiver of FOIA processing fees if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of

the operations or activities of the government and is not primarily in the commercial interest of the requester."

24.     On November 2, 2017, the Army provided by email a letter with a boilerplate acknowledgement that it had received Plaintiff's request and assigning it FOIA Activity Control Number FA-18-0024.

25.     Also on November 2, 2017, DOD provided by email a letter acknowledging Plaintiff's FOIA request, and giving it case number 18-F-0132. This letter stated that it received Plaintiff's FOIA request on October 25, 2017.  It also stated that "unusual circumstances" would prevent it from meeting its obligation to substantively respond within FOIA's 20-day statutory time period.

26.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), the Army was required to determine whether to comply with Plaintiff's FOIA request within twenty business days of receipt of the request and to notify Plaintiff immediately of such determination, the reasons therefor, and Plaintiff's right to appeal any adverse determination.

27.     Based on the Army's statement that it received Plaintiff's FOIA request on October 25, 2017, its determination regarding the FOIA request was due by November 22, 2017.

28.     Because DOD claimed that Plaintiff's request constituted "unusual circumstances," pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii), it was obligated to determine whether to comply with Plaintiff's FOIA request within thirty total business days of receipt of the request and to notify Plaintiff immediately of such determination, the reasons therefor, and Plaintiff's right to appeal any adverse determination.

29.     DOD's determination regarding Plaintiff's FOIA request was therefore due by December 8, 2017.

30.     Plaintiff has received no additional communications regarding its FOIA requests from either Defendant.

31.     As of the date of this complaint, Defendants have both failed to: (1) determine whether to comply with the FOIA requests, (2) notify plaintiff of any such determination of the reasons therefor, (3) advise plaintiff of the right to appeal any adverse determination, or (4) produce the requested records or otherwise demonstrate that the requested records are exempt from production.

32.     Because Defendants have failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C).

**CLAIM FOR RELIEF**

33.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

34.     By failing to respond to Plaintiff's FOIA requests within the statutorily mandated time frame, Defendants have violated their duties under 5 U.S.C. § 552, including but not limited to, the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1.      order Defendants to conduct searches for any and all records responsive to Plaintiff's FOIA requests using search methods reasonably likely to lead to the discovery of all responsive records;

2. order Defendants to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. enjoin Defendants from continuing to withhold any and all non-exempt responsive records;

4. order Defendants to grant Plaintiff's request for a fee waiver;

5. award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6. grant any other relief this Court deems appropriate.

Dated: December 14, 2017

Respectfully submitted,

/s/ *Javier M. Guzman*
Javier M. Guzman (D.C. Bar No. 462679)
Robin F. Thurston (pro hac vice motion to be filed)*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jguzman@democracyforward.org
rthurston@democracyforward.org

*Admitted in the State of Illinois; practicing under the supervision of members of the D.C. Bar while D.C. Bar application is pending.

*Counsel for Plaintiff*